UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

E. FRANK CORNELIUS,

    Plaintiff,

v.

                      Case No. 11-13186
                      Honorable Patrick J. Duggan

DYKEMA GOSSETT PLLC
RETIREMENT PLAN and
DYKEMA GOSSETT PLLC,

    Defendants.
_____/

**OPINION AND ORDER (1) DENYING PLAINTIFF'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT [ECF NO. 71] AND TO STRIKE [ECF NO. 69]; (2) GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND FOR SUMMARY JUDGMENT [ECF NO. 73]; (3) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO DETERMINE ADMINISTRATIVE RECORD [ECF NO. 60]; AND DENYING AS MOOT PLAINTIFF'S MOTIONS TO ENJOIN DEFENDANTS FROM INCLUDING IN THE ADMINISTRATIVE RECORD AFFIDAVITS PREPARED DURING AND FOR LITIGATION PURPOSES [ECF NO. 61] AND IN LIMINE [ECF NO. 80]**

On July 22, 2011, Plaintiff filed this *pro se* action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), seeking to require the Dykema Gossett PLLC Retirement Plan ("the Plan") and its administrator, Dykema Gossett PLLC ("Dykema") (collectively "Defendants"), to use a different method for calculating his retirement income benefits. Plaintiff's lawsuit simply is an administrative appeal challenging the method Defendants used to calculate his

retirement benefits. For the reasons discussed below, his attempts to make this matter more complicated, and his challenges to Defendants' administrative decision, fail.

## I. Factual and Procedural Background

Plaintiff is a lawyer who was employed with Dykema Gossett from September 9, 1974 until his termination on January 2, 1981.[1] As an employee, he became eligible for pension benefits under the Plan. Sometime around February 2007, Plaintiff elected to receive early retirement benefits which he began receiving in the amount of $171.11 per month on March 1, 2007.[2]

In late 2008, Plaintiff contacted Defendants and requested additional

---

[1]There are indications in the record that Plaintiff has been disbarred and he has filed a motion *in limine* to ask the Court to "reject all evidence proffered by [D]efendants" of his disbarment. (ECF No. 80.) Defendants raised the issue to address Plaintiff's apparent attempt to bring this lawsuit on behalf of other plan participants, arguing that as a disbarred lawyer he cannot represent the interests of other individuals. (ECF No. 79 at Pg ID 1979); *see also* 28 U.S.C. § 1654; *Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 1991). Plaintiff has made clear, however, that he is challenging only the calculation of *his* benefits. (*See, e.g.*, ECF No. 78 at 15.) Thus the Court has paid no attention to the status of his admission to the bar and is denying Plaintiff's motion *in limine* as moot (and also because it was unnecessarily filed as there is no jury from which this information needs to be shielded and a court is capable of ignoring irrelevant evidence and/or arguments).

[2]Defendants indicate that Plaintiff initially was mistakenly paid his normal retirement amount rather than the early retirement benefit he elected. After notifying Plaintiff of the error, the overpayment was deducted from future benefit checks and he subsequently began receiving the correct amount.

information regarding *inter alia* the methodology used to compute his monthly benefit amount. In February 2010, after an exchange of information, Plaintiff filed a claim with the Plan Administrator asserting that his benefit amount had been incorrectly calculated, thus improperly reducing his pension benefit. (ECF No. 73-3 at Pg ID 1757-58.) Specifically, Plaintiff challenged the methodology used to calculate his compensation for 1974, when he was employed for only part of the year. (*Id*.) The Plan Administrator, acting through Dykema attorney James Obermanns, sent Plaintiff a letter on April 30, 2010, rejecting Plaintiff's challenge. (*Id*. at Pg ID 1697-99.) Plaintiff filed an administrative appeal, which also was denied. (*Id*. at Pg ID 1695-96, 1686-87.)

Having exhausted his administrative remedies, Plaintiff filed this lawsuit on July 22, 2011. In his Second Amended Complaint, filed March 19, 2013, Plaintiff asserts the following claims against Defendants: (I) "Flaws in Annualizing Compensation"; (II) "Claim for Benefits"; and (III) Breaches of Fiduciary Duties and the Prudent Man Standard. All three claims are premised on Plaintiff's contention that Dykema incorrectly annualizes employee compensation under the Plan's terms. Plaintiff asserts that the miscalculation results in a breach of Dykema's fiduciary duties to the Plan, including making insufficient contributions to cover the correct amount owed to participants and their beneficiaries.

Prior to filing his Second Amended Complaint, Plaintiff had sought leave to file an amended complaint that asserted several additional claims against Defendants. Specifically, Plaintiff wanted to add a claim charging Defendants with failing to "unequivocally designate" a plan administrator as required under § 102 of ERISA, 29 U.S.C. § 1022. (*See* ECF No. 46 at 2.) He also wanted to include a claim charging Defendants with violating ERISA by "filing to disclose in any SPD . . . the fact that it uses a 45-hour week equivalency to convert an attorney's part year compensation to a full-time, full-year equivalent." (*Id*., brackets omitted.) Finally, he sought to allege "that Defendants failed to provide him with certain plan documents as requested in violation of ERISA." (*Id*.) The Court denied Plaintiff's request to add these claims, finding that they were futile.[3] (*Id*. at 6-7.)

On April 29, 2013, Plaintiff filed a motion entitled "Motion to Determine Administrative Record." (ECF No. 60.) In this motion, Plaintiff argues that the Administrative Record offered by Defendants fails to include (and should include) the following documents: (1) seven documents claimed by Defendants to be protected by the attorney-client privilege; (2) the data relied on by Dykema

---

[3] Plaintiff nevertheless raises the same challenges in his pending pleadings. As the Court already addressed those challenges, it will not do so again here.

4

employee Lani Givens in determining the number of Plan participants possibly impacted if Dykema annualized compensation as Plaintiff argues it should; (3) the 1978 Summary Plan Description ("SPD"); (4) benefit computation worksheets for December 31, 1979 referred to by Ms. Givens in a February 2010 e-mail discussing Plaintiff's administrative challenge; (5) the Form 5500 for 2008 referenced in an e-mail sent by Mr. Obermanns to *inter alia* Dykema Pension and Benefits Analyst Kathy VanRyn; and (6) files on the 1974 hires referenced in Ms. Given's March 18, 2010 e-mail to Carol Burrett. Defendants filed a response to Plaintiff's Motion to Determine Administrative Record on May 14, 2013, and Plaintiff filed a reply brief on May 21, 2013. Defendants then filed a supplemental response brief on July 19, 2013, which precipitated Plaintiff's filing a motion to strike that brief and full briefing on Plaintiff's motion to strike.[4]

Plaintiff next filed a motion on May 3, 2013, asking the Court to enjoin Defendants from including in the Administrative Record the affidavits of Ms.

---

[4]The Court is denying Plaintiff's motion to strike Defendants' supplemental brief as the sole purpose of the brief was to provide the Court with those versions of the Plan and SPDs referenced in the Administrative Record. (*See* ECF No. 68.) Plaintiff in fact had asked for an order requiring Defendants to identify these documents and include them in the Administrative Record in his Motion to Determine Administrative Record. (*See* ECF No. 63.) Furthermore, Plaintiff had the opportunity to address the documents in his dispositive motion pleadings and to respond to any arguments and/or statements in Defendants' supplemental brief.

Givens and Dykema's Chief Human Resources Officer, Kimberly A. Amodeo. (ECF No. 61.) Plaintiff argues that the affidavits were prepared solely for litigation and after the administrative proceedings closed. He also claims that they are of "dubious credibility[.]" Plaintiff contends that if the affidavits are included in the Administrative Record, his ERISA and constitutional rights will be violated.

Eventually, the parties filed cross-motions for summary judgment in late August 2013. Those motions have been fully briefed. On March 17, 2014, this Court issued a notice informing the parties that it is dispensing with oral argument with respect to the pending motions pursuant to Eastern District of Michigan Local Rule 7.1(f).

## II.     Standard of Review

Generally, a court reviews a plan administrator's decision with respect to ERISA benefits *de novo*. *Moon v. Unum Provident Corp.*, 405 F.3d 373, 378 (6th Cir. 2005) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948 (1989)). However an arbitrary and capricious standard applies where, as is the case here, the plan vests the administrator with complete discretion in making eligibility determinations and interpreting the plan.[5] *Id*. A court's review is

---

[5]The Plan provides that "[t]he Plan Administrator shall have full discretion ... to construe and interpret the Plan, decide all questions of eligibility and determine
(continued...)

6

confined to the administrative record as it existed when the administrator issued its final decision with respect to the plaintiff's claim for benefits. *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 615 (6th Cir.1998). The plan administrator's decision must be upheld under the arbitrary and capricious standard if the administrative record can support a "reasoned explanation" for the decision. *Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000).

While the arbitrary and capricious standard is "the least demanding form of judicial review of administrative action," *id.,* "it is not a rubber stamp for the administrator's determination." *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 617 (6th Cir. 2006) (citing *Jones v. Metro. Life Ins. Co.*, 385 F.3d 654, 661 (6th Cir. 2004)). The administrator's decision must result from "a deliberate, principled reasoning process" and be "supported by substantial evidence." *Id.* (*Glenn v. Metro. Life Ins. Co.*, 461 F.3d 660, 666 (6th Cir. 2006) (additional citations omitted)).

Moreover, when reviewing the administrator's decision, a court must consider potential conflicts of interest, such as where the plan administrator also is

---

[5](...continued)
the amount, manner and time of payment of any benefits under the Plan." (ECF No. 73 Ex. 2 § 7.01.)

the payer of benefits.[6] *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111-12, 128 S. Ct. 2343, 2348 (2008); *Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 165 (6th Cir. 2007). Nevertheless, a conflict of interest is just "*a* factor in determining whether there is an abuse of discretion." *Firestone Tire & Rubber Co.*, 489 U.S. at 115, 109 S. Ct. at 957 (internal quotation marks and citation omitted) (emphasis added). The existence of a conflict does not change the standard of review. *Glenn*, 554 U.S. at 116-17, 128 S. Ct. at 2350.

In discussing the significance of a conflict of interest, the Supreme Court instructed in *Glenn* that

> [b]enefits decisions arise in too many contexts, concern too many circumstances, and can relate in too many different ways to conflicts– which themselves vary in kind and in degree of seriousness– for us to come up with a one-size-fits-all procedural system that is likely to promote fair and accurate review. Indeed, special procedural rules would create further complexity, adding time and expense to a process that may already be too costly for many of those who seek redress.
>
> We believe that *Firestone* means what the word "factor" implies, namely, that when judges review the lawfulness of benefit denials, they will often take account of several different considerations of which a conflict of interest is one.

---

[6] Defendants argue that there is no conflict of interest in this case because the money Plaintiff seeks is maintained in a trust fund. (ECF No. 79 at Pg ID 1986-87, citing *DeNobel v. Vitro Corp.*, 885 F.2d 1180, 1191 (4th Cir. 1989); *Ford v. Uniroyal Pension Bd. of Benefits & Awards*, 2005 WL 2671310, at *4 (E.D. Mich. Oct. 19, 2005); *Abnathya v. Hoffman-LaRoche*, 2 F.3d 40, 45 (3d Cir. 1993).)

128 S. Ct. at 2351. A conflict of interest "should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration." *Id*. at 117, 128 S. Ct. at 2351. By contrast, a conflict of interest "should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decision making." *Id*.

Here, Plaintiff points to nothing except the fact that Dykema both administers and makes contributions for Plan benefits.[7] The record does not

---

[7]Plaintiff does contend that no deference is owed to the Plan Administrator's decision because Dykema allegedly failed to follow ERISA's claim and appeal rules and the requirements of the Plan documents. (*See* ECF No. 72.) Specifically, Plaintiff claims that Dykema failed to: (1) "make 'reference to the *specific* plan provisions on which the determination [calculation of his retirement benefit] is based" or to identify the Plan documents to which it referred; (2) provide "a description of any additional material or information necessary for the claimant to perfect the claim . . ."; (3) "provide for a review that takes into *all comments, documents, records, and other information submitted by the claimant* relating to the claim . . ."; and (4) provide Plaintiff with a "specific reason or reasons for the adverse determination" in a letter that would "be understandable without legal . . . counsel[.]" (*Id*. at 26-29 (emphasis by Plaintiff).) Plaintiff's contentions lack merit, however, for the reasons set forth in Defendants' response to his motion for summary judgment (*see* ECF No. 79 at Pg ID 1993-98) and the Court's decision
(continued...)

suggest that Dykema has a history of biased claims administration or that the asserted conflict otherwise affected the benefits decision. Notably, the difference in Dykema's calculation of the monthly benefits owed to Plaintiff and Plaintiff's calculation is less than $2.00– an amount unlikely to have "affected the benefits decision." *Glenn*, 554 U.S. at 116, 128 S. Ct. at 2351. Thus the Court finds little if any significance in the asserted conflict of interest.

## III. The Administrative Record

As indicated in the previous section, Plaintiff has filed two motions concerning the Administrative Record. In the first motion, he argues that the Administrative Record should include a number of documents that Defendants did not include in the record submitted to the court. (ECF No. 60.) For the reasons articulated in Defendants' opposition to Plaintiff's motion (*see* ECF No. 63 at Pg ID 1314-22), the Court concludes that they have properly asserted the attorney-client privilege with respect to the seven documents (e-mails) sought in the motion and that no exception applies here. The data relied on by Ms. Givens in determining the number of Plan participants possibly impacted if Dykema annualized compensation in accordance with Plaintiff's method is not relevant to

---

[7](...continued)
denying in part his attempts to amend his complaint to add claims based on these alleged procedural violations. (*See* ECF No. 46.)

his claim for benefits. Moreover, Defendants demonstrate in their response to Plaintiff's motion that the data, upon subsequent investigation, proved to be incorrect. (*Id*. at Pg ID 1323-24.)

The Form 5500 for 2008 which Ms. VanRyn examined and referenced in an e-mail to Mr. Obermanns also is not relevant to this Court's review of the Plan Administrator's decision. The Form 5500 was not created or consulted for the purpose of addressing Plaintiff's administrative claim, but rather to answer his question as to the name and address of the then Plan actuary. The benefit computation worksheets referred to by Ms. Givens in a February 2010 e-mail are not relevant as well. According to Plaintiff, they are relevant only to the determination of "how many participants are involved" and whether Dykema is guilty of "yet another breach of duty" (i.e. violating ERISA § 209(a)(1)'s requirement to "maintain records with respect to each of his employees sufficient to determine the benefits due or which may become due to such employees"). (*See* ECF No. 65.) Plaintiff, however, lacks standing to assert claims for benefits and ERISA violations on behalf of other participants.

Defendants indicate that Plaintiff has received a copy of the 1978 SPD that he claims should be included in the Administrative Record. (*Id*. at Pg ID 1325.) They have no opposition to it being considered part of that record. (*Id*.) The Court

therefore is granting Plaintiff's motion to the extent he seeks to include the SPD in the Administrative Record. Nevertheless, the Court sees no reason to physically place it into the already filed record at this time.

In his second motion concerning the Administrative Record, Plaintiff seeks to enjoin Defendants from including affidavits from Ms. Givens and Ms. Amodeo in the record that were prepared during and for litigation. Both affidavits concern Dykema's investigation into the number of participants who would be affected by the adoption of Plaintiff's annualization methodology, including an initial estimate provided by Ms. Givens and a subsequent determination that the estimate was significantly incorrect. (*See* ECF No. 61 Attach.) Defendants do not believe the affidavits should be included in the Administrative Record. (*See* ECF No. 66.) Defendants acknowledge that the information contained therein is not relevant to whether the Plan Administrator properly calculated Plaintiff's benefits. Instead, they offer the affidavits to respond to Plaintiff's attempt to seek participant-wide relief and related claim that the Plan is under-funded. (*Id*.) As such, the Court is denying as moot Plaintiff's motion to enjoin Defendants from including these affidavits in the Administrative Record.

## IV. Evaluating Dykema's Calculation

Plaintiff's claims are premised on his assertion that Dykema uses an

improper methodology to annualize a participant's compensation (when the employee worked only part of the year) when calculating the participant's retirement benefit. Plaintiff asserts that the methodology is arbitrary and capricious and thus Dykema has improperly calculated his benefit, resulting in payments owed to him, contributions owed to the Plan (i.e. that the Plan has been underfunded), and a breach of Dykema's fiduciary duties.

Plaintiff's retirement benefit was calculated using his "Final Average Compensation." Section 2.13 of the April 1, 1976 Retirement Plan defines that term as follows:

> "Final Average Compensation" means one-fifth of the sum of the highest five consecutive years of Compensation. In the determination of the Final Average Compensation of any Employee who has been employed at any time by the firm on a part-time basis . . . or who is employed full-time but for less than a complete year such as in the year employment commences or ends, the Employee's Compensation for any such period shall be converted to a full-time, full-year equivalent by multiplying the Employee's Compensation for such period by a fraction, <u>the numerator of which is the normal annual number of hours for a regular full-time Employee, and the denominator of which is the Employee's part-time or part-year hours for the same period</u>.

(ECF No. 73 Ex. 9, emphasis added). According to the Plan, the purpose of the rule contained in the underlined portion of Section 2.13 "is to avoid double proration in the computation of benefits for Employees who at any time have been employed by the Firm on a part-time basis or for less than a full year." (*Id*.)

Double proration is prohibited under ERISA.  *See* 29 CFR § 2530.204-2.

Plaintiff's dispute with the calculation of his retirement benefit centers on the Plan Administrator's interpretation of the underlined language above.[8]  With respect to the first clause of that language, Dykema interprets "the normal annual number of hours for *a* regular full-time Employee" as referring to a generic full-time staff employee, as opposed to *the* participant (i.e. *the* employee).  As the Plan Administrator explained to Plaintiff, "[t]his resulted in a uniform and more simplified method of calculating benefits without needing to make a distinction between the type of Firm employee whose benefit was being calculated." (A.R. at EFC000013.)  It further guaranteed that the Plan "was determining benefits in a manner that did not discriminate in favor of higher-paid participants, by not differentiating between staff employees and the generally more highly-compensated lawyers in the Firm." (*Id.*)  Based on the firm's actual payroll practices, the Plan Administrator determined that the normal daily hours of a regular full-time Employee was 8 hours. As such, it multiplied that number by the number of work days in the year (261), resulting in a total of 2,088 hours for the

---

[8]In his motion for partial summary judgment, Plaintiff argues as well that Dykema uses the wrong number (.9 as apposed to .93) to calculate his early retirement benefit.  The 1980 Plan which was in effect when Plaintiff's employment with Dykema ended, however, provides for .9 to be used.  (ECF No. 79 Ex. 18.)

14

numerator.

The second clause of the disputed language defines the denominator as "*the Employee's part-time or part-year hours for the same period.*" The Plan Administrator interpreted this to mean "the participant's actual credited hours for that year . . . ." (*Id.*) Because attorneys' hours are more unpredictable than staff employees and not all hours worked are tracked, the Plan Administrator elected to use a 45-hour equivalency. (*Id.*) According to Defendants, this equivalency "was not simply pulled out of thin air." (ECF No. 73 at Pg ID 1670.) In fact, the Plan provides that "the Firm may, in its discretion, determine Hours of Service for some or all purposes under Plan, or for some or all Employees, by crediting to an Employee 45 Hours of Service for each week for which the Employee would be credited with at least one Hour of Service under the regular definition for Hour of Service in the preceding paragraph." (*See* ECF No. 79, Ex. 16 at Pg ID 2283.)

The Plan does not define "hours" as used in section 2.13 and it grants the Plan Administrator discretion to interpret the Plan. *See supra* at n.5. The Plan Administrator's methodology for calculating Plaintiff's benefit was based on a reasonable interpretation of the Plan language. Specifically, the Plan uses different language to identify the numerator and denominator multiplied by an employee's compensation to achieve a full year equivalent, thereby indicating that each refers

15

to a different type of number. There are reasoned explanations for the numbers the Plan Administrator used for each. In short, Defendants' decision with respect to Plaintiff's benefits was not arbitrary and capricious.

## V.      Conclusion

For the above reasons, this Court concludes that Defendants are entitled to summary judgment with respect to Plaintiff's claims alleging that they erred in annualizing his part-year compensation (Count I) and therefore owe him benefits (Count II). Plaintiff's breach of fiduciary duty and prudent man standard claim (Count III) is premised on his assertion that Dykema incorrectly annualizes employee compensation and thus makes insufficient contributions to the Plan. (*See* Second Am. Compl. ¶ 33.) Defendants therefore are entitled to summary judgment on this claim as well.

Accordingly,

**IT IS ORDERED**, that Plaintiff's Motion to Determine Administrative Record (ECF No. 60) is **GRANTED IN PART AND DENIED IN PART**;

**IT IS FURTHER ORDERED**, that Plaintiff's Motion to Enjoin Defendants from Including in the Administrative Record Affidavits Prepared During and for Litigation Purposes (ECF No. 61) and Plaintiff's Motion *In Limine* (ECF No. 80) are **DENIED AS MOOT**;

**IT IS FURTHER ORDERED**, that Plaintiff's motion to strike supplemental brief (ECF No. 69) is **DENIED**;

**IT IS FURTHER ORDERED**, that Defendants' Motion for Summary Judgment and Judgment on the Administrative Record (ECF No. 73) is **GRANTED**;

**IT IS FURTHER ORDERED**, that Plaintiff's Motion for Partial Summary Judgment is **DENIED**.

Dated: March 25, 2014               s/PATRICK J. DUGGAN
                                    UNITED STATES DISTRICT JUDGE

Copies to:
E. Frank Cornelius, Esq.
Michael A. Alaimo, Esq.